___



**SO ORDERED,**

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: DENNIS AND BRENDA WESTER** | **CASE NO.: 19-13140-SDM** |
| **DEBTOR(S).** | **CHAPTER 7** |

## OPINION AND ORDER DENYING DEBTORS' MOTION
## TO CONVERT CASE TO CHAPTER 13

**THIS CAUSE** came before the Court for hearing on the Debtors' *Motion By Debtor to Convert Case Under Chapter 7 to Case Under Chapter 13* (Dkt. #35)(the "Motion to Convert"). On January 7, 2020, the Court issued a bench ruling, which this opinion and order incorporates by reference.

### I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 151, 157(a), and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (E).

## II. FACTS

The Debtors, Dennis and Brenda Wester, filed for bankruptcy relief under Chapter 7 on August 6, 2019. At the time of filing, the Westers listed as an asset a "[p]ossible inheritance from recently deceased mother" (the "inheritance") with an unknown value on Schedule B. The Westers also listed the inheritance on Schedule C as an exempt asset with a claimed exemption of $100,000.00. The Debtors improperly claimed the exemption because Miss. Code Ann. § 85-3-13 is inapplicable to this type of asset.

After apprising the Westers the inheritance was not exempt and requesting the amendment of Schedule C to remove the claimed exemption, the Chapter 7 Trustee, Henry Applewhite (the "Trustee"), filed a *Trustee's Notice of Change of Status to Asset* on August 27, 2019. Three days later, the Westers filed an Amended Schedule C in which the inheritance was still listed as having an unknown value, but the schedule now had a claimed exemption value of $4,170.00. The Debtors purportedly claimed the exemption under Miss. Code Ann § 85-3-1(a) and (d), both of which are also inapplicable to the inheritance. After another request by the Trustee, the Westers filed a second Amended Schedule C on September 19, 2019, which did not purport to claim the inheritance as exempt.

On November 26, 2019, the Westers filed the instant motion to convert their Chapter 7 case to one brought under Chapter 13. The Trustee objected to conversion, arguing that the motion was filed in bad faith. On January 7, 2020, the Court heard arguments from the parties and testimony from both Debtors. According to the testimony and evidence presented at the hearing, Mrs. Wester's inheritance totaled $34,747.20. It is undisputed that the inheritance is solely an asset

belonging to Mrs. Wester to which Mr. Wester has no rights.[1] Under examination by the Trustee, Mrs. Wester admitted that she and her husband were aware of the existence of the inheritance at the time of filing if not its precise value. She also admitted that the decision to convert the case resulted from learning that the inheritance was a non-exempt asset which the Trustee wished to claim for the benefit of unsecured creditors.

The Westers have only two secured debts: (1) a $6093.13 debt owed to Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") and (2) a HELOC loan owed to Renasant Bank in the approximate amount of $25,000.00. The Vanderbilt debt was apparently a PMSI loan for a new central air conditioning unit and the HELOC loan was secured by their homestead property in Tupelo, Mississippi. The Westers testified they possess a life estate interest in their homestead with the remainder going to their children. The timely-filed unsecured claims amount to approximately $23,000.00 of which $10,435.05 is an unsecured debt solely owed by Mr. Wester to Discover.

At the hearing, Mrs. Wester candidly admitted that the decision to convert was also driven by the Westers' desire to use the inheritance to pay off those secured debts at the expense of unsecured creditors. While the Westers, through counsel, indicated an intention to propose a

---

[1] A joint bankruptcy case filed under 11 U.S.C. § 302 is jointly administered but creates two separate estates. Some debts are owed jointly by both debtors while others may be exclusively owed by one or the other. Similarly, assets of the bankruptcy estate may also be owned jointly or individually. *See In re Carpenter*, 2018 WL 6978761, at *8 (Bankr. N.D. Miss. May 14, 2018) ("Despite [] joint administration, the estates of the [debtors] remain separate and distinct. . . .") In this case, the inheritance is solely the property of Mrs. Wester to which Mr. Wester has no claim, while, for example, the claim of Discover (POC #1) is owed by Mr. Wester but not Mrs. Wester. Therefore, ultimately, unless the estates are substantively consolidated under 11 U.S.C. § 302(b) and Federal Rule of Bankruptcy Procedure 1015(b), the assets solely of the estate of Mrs. Wester would not be utilized to pay debts solely owed by Mr. Wester, but they would be utilized to pay the debts solely owed by Mrs. Wester and jointly owed by them both. *See generally In re Roberts*, 570 B.R. 532, 542 (Bankr. S.D. Miss. 2017)(discussing the effect of substantive consolidation on jointly administered bankruptcy cases).

Chapter 13 plan which would pay 100% to unsecured creditors over time, the Trustee argued that the Westers' Schedule J indicates there is no disposable monthly income with which to pay unsecured creditors regardless of the disposition of the inheritance post-conversion. Both Westers are on a fixed-income.

### III. DISCUSSION

Section 706(a) provides that a debtor may convert a case from a case under Chapter 7 to a case under Chapters 11, 12, or 13 at any time. 11 U.S.C. § 706(a).[2] Section 706(d), however, imposes a limitation on a debtor's right to convert and provides that, "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 706(d). As the Court noted in its bench ruling, the controlling law relevant to the issue presented before the Court and to these Bankruptcy Code provisions was set forth in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007).

A finding of prepetition, bad faith conduct, including conduct that amounts to an abuse of process, on the part of a Chapter 7 debtor provides sufficient justification for a denial of a motion to convert to Chapter 13. *Marrama,* 549 U.S. at 374-75. In *Marrama*, a Chapter 7 debtor made several misleading or inaccurate statements about his principal asset (a house in Maine that the debtor had transferred to a newly-created trust for the specific purpose of protecting it from creditors) as well as other matters. *Id.* at 368-69. When the trustee advised the debtor of his intention to recover the house from the trust, the debtor attempted to convert his case to Chapter 13. *Id*. The debtor argued repeatedly before several courts that he had an absolute right to convert from Chapter 7 to Chapter 13—regardless of his conduct before the motion to convert was filed.

---

[2] Except where stated otherwise, all citations to the U.S. Code shall refer to Title 11 (i.e. the Bankruptcy Code).

*Id.* at 369. The Supreme Court disagreed and rejected the position that the right to convert was absolute because § 706(d) expressly conditions conversion to Chapter 7 on the debtor's ability to qualify as a debtor under Chapter 13. *Id.* The Supreme Court found that the debtor's conduct amounted to bad faith and prevented him from satisfying § 706(d), i.e., qualifying as a debtor under Chapter 13:

> There are at least two possible reasons why Marrama may not qualify as such a debtor, one arising under § 109(e) of the Code, and the other turning on the construction of the word "cause" in § 1307(c). The former provision imposes a limit on the amount of indebtedness that an individual may have in order to qualify for Chapter 13 relief. More pertinently, the latter provision, § 1307(c), provides that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause" and includes a nonexclusive list of 10 causes justifying that relief. None of the specified causes mentions prepetition bad-faith conduct (although paragraph (10) does identify one form of Chapter 7 error—which is necessarily prepetition conduct—that would justify dismissal of a Chapter 13 case). Bankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words "for cause." In practical effect, **a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13.** That individual, in other words, is not a member of the class of " 'honest but unfortunate debtor[s]' " that the bankruptcy laws were enacted to protect. The text of § 706(d) therefore provides adequate authority for the denial of his motion to convert.

*Id.* at 371-74 (citations omitted) (emphasis added).

In denying the debtor's motion to convert, the Supreme Court also considered the procedural consequences of allowing a conversion to a case under Chapter 13 where, ultimately, a debtor's case may end up converting back to Chapter 7. Specifically, the Supreme Court looked at the text of § 105(a)[3], which gives bankruptcy judges broad authority to prevent an abuse of the

---

[3] 11 U.S.C § 105(a) provides:

"The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action

bankruptcy process. *Id.* at 374. *See also In re Rosson*, 545 F.3d 764, 773–74 (9th Cir. 2008) (interpreting *Marrama* to hold that debtor's rights to voluntary dismissal under § 1307(b) and/or conversion from Chapter 7 to Chapter 13 are not absolute but may be denied on grounds of bad-faith conduct or "to prevent an abuse of process.").

Like the debtor in *Marrama*, the Westers' conduct in this case also prevents them from qualifying as Debtors under Chapter 13. The Westers' schedules contained inaccuracies and inconsistencies regarding the value of the inheritance. Despite listing the value as "unknown" in Schedule B, the Westers attempted to exempt almost $100,000.00 in Schedule C and then a mere $4,170.00 after an amendment to Schedule C. Even worse, the Westers attempted to exempt the inheritance using Mississippi Code provisions that were not applicable to the inheritance. While the Trustee informed the Westers to remove the claimed exemption on several occasions, the Westers only removed the exemption after amending their schedules twice.

The Court also takes issue with the timing of the Motion to Convert. The Trustee filed a *Notice of Change of Status to Asset Case* on August 27, 2019 and a *Notice of Need to File Proof of Claim* was issued that same day. The latter filing set a deadline of November 27, 2019 for non-government proofs of claim. Although made aware of the issues surrounding the inheritance at the initial 341 meeting held on September 9, 2019 (and continued to October 1, 2019), the Westers nevertheless waited until November 26, 2019 to file the instant motion—112 days after filing the case and one day before the deadline for filing non-government claims against them. All the while, the Trustee continued to pursue the inheritance asset for the estate and accrue expense. Faced with

---

or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

the reality that the Westers were not going to be able to recover a portion of the inheritance, if not in its entirety, the Westers finally filed their Motion to Convert.

In addition to the conduct above, the Westers have no viable path forward under a Chapter 13 case. The Westers are dependent on a fixed income, and their Schedules I and J reflect no disposable income for filing a feasible Chapter 13 plan. Nevertheless, the Westers testified as to their intention to use the inheritance to pay off their HELOC secured debt upon confirmation of their Chapter 13 plan and fund a 100% payment to their unsecured creditors over and throughout the length of the Chapter 13 plan. The filing of that plan would be non-confirmable.

Further, there is no arrearage to be cured for which a Chapter 13 repayment plan might be justified. The Westers are presently current on their HELOC loan due and owing Renasant Bank. Indeed, after issuing its bench ruling in this matter, the Court approved their reaffirmation of the HELOC loan owed to Renasant. Although testimony was presented indicating the debt owing Vanderbilt on the air unit was in arrears, there was no testimony before the Court that the Westers intended to reaffirm this indebtedness in Chapter 7 nor was there any testimony conversion to Chapter 13 was necessary to pay and retain this collateral.

Based on the testimony and evidence set forth at the hearing, the Court finds that the actions of the Westers represent an attempt to abuse the bankruptcy process. Allowing the Westers to convert their case would open the doors to the type of litigation practices the Court in *Marrama* cautioned against. The Westers conceded that their goal in seeking conversion was to be able to use the inheritance to pay off their mortgage debt. But the inheritance is clearly a nonexempt asset. Conversion of the Chapter 7 case to a Chapter 13 case does not alter that fact. Thus, even in a Chapter 13 case, the inheritance funds must first go to pay allowed administrative, priority, and unsecured claims before any of it can be applied to secured claims. After applying the inheritance

to such claims, the Westers would still be responsible for making all necessary plan payments, but according to their Schedules, they do not have disposable income to fund a feasible plan (and the Court notes that filing a Chapter 13 plan without sufficient income to fund it is itself an indication of bad faith). Consequently, the Court concludes that allowing this case to convert would be an abuse of the bankruptcy process under the rule announced in *Marrama*.

ACCORDINGLY, it is hereby **ORDERED** that the Debtors' *Motion to Convert Case Under Chapter 7 to Case Under Chapter 13* (Dkt. #35) is **DENIED**.

##**##END OF ORDER##**